IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC DECISIONS, LLC, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.:** |
| v. | : | **1:13-cv-2510-WSD** |
| | : | |
| THE MARTIN LUTHER KING, JR. | : | |
| CENTER FOR NONVIOLENT | : | |
| SOCIAL CHANGE, INC., | : | |
| | : | |
| **Defendant.** | : | |

<u>MEMORANDUM OF LAW IN SUPPORT OF  PLAINTIFF STRATEGIC DECISIONS' MOTION *IN LIMINE* AND/OR FOR SANCTIONS</u>

Plaintiff Strategic Decisions, LLC ("Strategic Decisions") respectfully submits this Memorandum of Law in support of its Motion *in Limine* and/or for Sanctions.

## I.    BACKGROUND

### A.    Strategic Decisions' Allegations and Discovery Efforts

Defendant's former president and chief executive officer, Martin Luther King III ("Martin"), executed an agreement for "Consultative Services" with Strategic Decisions, pursuant to which Strategic Decisions provided organizational development services to Defendant.  (<u>See</u> Agreement, attached as Exhibit A.)  The Agreement contains six "deliverables," with a set of tasks listed under each

1

deliverable, and Defendant agreed to pay Strategic Decisions a flat fee of $216,000 for the work.  (Id.)  The term of the Agreement is December 6, 2010, through December 31, 2011.  (Id.)  Although Defendant continued to enjoy Strategic Decisions' performance through the term of the Agreement, Defendant has refused to pay Strategic Decisions for the work.

On July 30, 2013, Strategic Decisions filed this lawsuit seeking to recover the amounts owed under the Agreement.  (Compl. [Dkt. 1].)  The Complaint asserts claims for breach of contract and alternative claims for *quantum meruit* and unjust enrichment.  (Id.)  The Complaint also seeks to recover against Defendant because it has acted in bad faith, been stubbornly litigious and caused Strategic Decisions unnecessary trouble and expense.  (Id.)

Discovery commenced on September 23, 2013, and Strategic Decisions served its first document requests the following day.  Since then, the Court and Strategic Decisions have made numerous attempts to get Defendant to comply with its discovery obligations.  After months of letters, e-mails, in-person conferences, multiple discovery extensions and compulsion orders issued against Defendant by the Court, Defendant finally began searching for and producing documents in May and June 2014.  Defendant last produced materials on December 10, 2014.  (See Def.'s Resp. to Order to Show Cause [Dkt. 85].)

2

**B.     The Notice of 30(b)(6) Deposition of Defendant**

On April 15, 2014, Strategic Decisions notified Defendant that it planned to conduct a Rule 30(b)(6) deposition.   (See E-mail, attached as Exhibit B.)   The correspondence advised Defendant of the topics of examination.  (Id.)

On April 18, 2014, Strategic Decisions noticed the 30(b)(6) deposition of Defendant for May 12, 2014.  (See Notice of Dep. [Dkt. 39], attached as Exhibit C.)  The Notice identified 18 topics of examination, including:

2.     The services provided by Strategic Decisions.

. . .

7.     The Defendant's efforts to identify the services provided by Strategic Decisions; all persons involved in the efforts; and the results of the efforts.

8.     The factual basis for the Defendant's decision not to pay Strategic Decisions; all persons involved in the decision; and all considerations underlying the decisions, including all facts, events, documents, discussions and meetings relevant to the decision.

9.     The Defendant's efforts to obtain grants from JPMorgan Chase between 2010 and 2012; the results of those efforts; and the reasons you believe the efforts were or were not successful.

(Id. at 6-7.)

On May 2, 2014, counsel for Defendant sent a letter to counsel for Strategic Decisions indicating that Defendant would not produce any person to testify regarding Topics 2, 7, 8 and 9 of the Notice.  (See Barnum Letter, attached as

Exhibit D.)   The letter advised that Defendant's former president and CEO, "Martin Luther King III is the person who could speak to those topics," but counsel for Defendant was not able to speak with Martin or secure his appearance at the deposition because of unrelated litigation between Defendant and the Estate of Martin Luther King, Jr., Inc.  (Id.)  Strategic Decisions responded to Defendant's correspondence on May 3, 2014, reminding Defendant of its obligations under Rule 30(b)(6) to produce a witness to provide binding testimony as to the topics noticed.  (See E-mail, attached as Exhibit E.)  Strategic Decisions thereafter served Martin with a Subpoena to Testify at a Deposition and noticed his deposition for May 27.  (See Notice of Dep. [Dkt. 48].)

At that time, the discovery deadline had been extended twice, and the new deadline was approaching.  Strategic Decisions contacted the Court to request a discovery conference, and the Court instructed the parties to prepare a joint submission on the discovery issues.  On May 5, 2014, the parties submitted a Second Joint Submission on Discovery Issues.[1]   (Second Joint Submission, attached as Exhibit F.)  In the Second Joint Submission, Strategic Decisions requested that Defendant be compelled to comply with the Federal Rules and

---

[1]   The First Joint Submission was submitted on February 24.  That Submission addressed Defendant's deficient document production, among other things.  A telephone conference was held on February 25, and Defendant was ordered to supplement its production.

produce a witness to give knowledgeable and binding answers as to the topics set

out in the Notice.  (Id. at 5-6.)  The Court set a hearing for May 19, 2014.

### C.     The Re-Notice of 30(b)(6) Deposition of Defendant

On May 7, 2014, Strategic Decisions re-noticed the Rule 30(b)(6) deposition

of Defendant for May 15, 2014.  (See Re-Notice of Dep. [Dkt. 44], attached as

Exhibit G.)  The Re-Notice identified 17 topics on which Defendant's designee

would provide testimony to bind Defendant.  The topics included the following:

2.     The services provided by Strategic Decisions.

. . .

6.     Defendant's use of the Investment Proposal and/or any parts of the Investment Proposal between January 2011 and present.

7.     Defendant's efforts to identify the services provided by Strategic Decisions; all persons involved in the efforts; and the results of the efforts.

8.     The factual basis for Defendant's decision not to pay Strategic Decisions; all persons involved in the decision; and all considerations underlying the decision, including all facts, events, documents, discussions and meetings relevant to the decision.

9.     Defendant's efforts to obtain grants from JPMorgan Chase between 2010 and 2012; the results of those efforts; and the reasons you believe the efforts were or were not successful.

10.    The King Center Imaging Project, including the funding, development and implementation of the project; Defendant's partnership with JPMorgan Chase; and Strategic Decisions' contributions to the project.

(Id. at 6-7.)

5

On May 13, 2014, Defendant informed Strategic Decisions that it would produce a witness to testify on all topics. (<u>See</u> E-mail correspondence, attached as Exhibit H.) Defendant designated its CEO, Bernice King ("Bernice"), to testify on all topics. (<u>See</u> Def. Dep. at 15:12-16:5, attached as Exhibit I; Hr'g Tr. at 71:20-72:23, attached as Exhibit J.) Defendant did not object to any of the deposition topics and never sought a protective order. (Hr'g Tr. [Ex. J.] at 71:20-72:23.)

### D.    Defendant's Testimony at the Rule 30(b)(6) Deposition

Bernice testified that Defendant, at all times, had in its possession hundreds of boxes of documents which might contain relevant material. (Def. Dep. [Ex. I]. at 149:2-152:2.) She did not review any of them prior to the deposition. (<u>See</u> <u>id.</u>) In fact, she testified that the *only* documents she reviewed were a few e-mails Terry Giles had produced in response to a subpoena duces tecum issued by Strategic Decisions. (<u>Id.</u> at 15:12-19:5, 28:22-30:1.) Bernice did not even review her own e-mail account before the deposition. (<u>Id.</u> at 6:16-8:6, 25:23-31:3.) She also admitted that she had not contacted or interviewed any relevant witnesses. (<u>Id.</u> at 230:19-232:19.) Accordingly, as shown below, she was unprepared and failed to provide any meaningful testimony on Topics 2, 6, 7, 8, 9 and 10 of the Re-Notice.

1.     ***The testimony regarding the Agreement, the services provided under the Agreement and Defendant's efforts to identify the services provided under the Agreement (Topics 2 and 7)***

At the deposition, Bernice was questioned about Topic 2 of the Re-Notice. Bernice was provided a copy of the Agreement and asked about Strategic Decisions' performance of the six deliverables and the tasks listed under each deliverable. Bernice testified that she does not know whether any of the deliverables or tasks were performed. (Def. Dep. [Ex. I] at 167:9-174:11.) Specifically, Bernice testified as follows:

- she does not know whether Deliverable 1 or any of the tasks under Deliverable 1 were performed (id. at 167:13-168:24);

- she does not know whether Deliverable 2 or any of the tasks under Deliverable 2 were performed (id. at 167:13-170:1);

- she does not know whether Deliverable 3 or any of the tasks under Deliverable 3 were performed (id. at 167:13-171:21);

- she does not know whether Deliverable 4 or any of the tasks under Deliverable 4 were performed (id. at 167:13-173:11);

- she does not know whether Deliverable five or any of the tasks under Deliverable 5 were performed (id. at 167:13-173:16); and

- she does not know whether Deliverable 6 or any of the tasks under deliverable six were performed (id. at 167:13-173:20).

Bernice also testified that she did not ask anyone about these matters before the deposition. (Id. at 174:1-8.) When asked why she does not know whether the

deliverables were performed, she testified, "I don't have access to or communication with anyone from the previous administration that would be able to provide any of this." (Id. at 167:13-174:11.) She further testified that her administration did not ask Martin about the Agreement simply because her administration does not have good relations with him. (Id. at 249:24-250:14.)

As for Topic 7, Bernice could not say what efforts Defendant made to identify the services performed by Strategic Decisions. (Id. at 268:14-271:10.) Although she testified that her personal assistant, Eric Tidwell, made some effort in February 2013 to determine what services were provided, she did not know what those efforts were. (Id. at 268:14-271:1) ("But I don't know what else, you know, he did. Like, I don't know if he went to look here, or look there, look there."). She also did not know what, if any, efforts Defendant's former custodian, Terry Giles, made to identify the services provided under the Agreement. (Id. at 271:2-10.)

### 2. The testimony regarding the Investment Proposal, JPMorgan Chase and the King Center Imaging Project (Topics 2, 6, 9, and 10)

Bernice testified that she has "no idea" whether Strategic Decisions played any role in the Imaging Project. (Id. at 207:16-24.) Concerning the Investment Proposal, Bernice testified that she does not know who created it. (Id. at 208:3-22.) She does not know how the Investment Proposal was used. (Id. at 208:3-22.)

She has "no idea" whether the Investment Proposal was submitted to JPMorgan Chase. (Id. at 210:8-11.) She does not know how the website for the King Center Imaging Project was developed or whether Strategic Decisions contributed to its development. (Id. at 210:12-211:20.) She does not know how the traveling exhibit for the King Center Imaging Project was developed or whether Strategic Decisions contributed to the exhibit's development. (Id. at 211:24-212:18.) She also testified that she has "no idea" why Defendant never received a grant or donation from JPMorgan Chase. (Id. at 218:16-220:21.)

### 3.    *The testimony regarding the decision not to pay Strategic Decisions (Topic 8)*

Bernice was also asked about the basis for Defendant's decision not to pay Strategic Decisions. Here, she testified that the former custodian, Terry Giles, made the decision not to pay Strategic Decisions. (Id. at 230:19-232:19.) When asked about the considerations underlying the decision, Bernice testified,

> All I know is we were told that they were not going to be paid. "We don't have the money." That's it. So what other reasons, I have no idea.

(Id. at 230:19-232:19.) Bernice also testified that she does not know how Giles came to make the decision not to pay. (Id.) She also admitted that she did not contact or interview Giles before the deposition and that she had made no effort to find out the reasons for the decision not to pay Strategic Decisions. (Id.)

**E.     The Discovery Conference and Defense Counsel's Concessions**

On May 19, 2014, a discovery conference was held in open court to address the various discovery issues set out in the Second Joint Submission. (See Hr'g Tr. [Ex. J].)  At the hearing, counsel for Defendant acknowledged that Bernice was presented -- without objection -- to testify as Defendant's corporate representative on all topics listed in the Re-Notice.  (See id. at 71:20-72:23.)   Additionally, defense counsel conceded that Defendant is bound by the testimony Bernice provided at the deposition. (Id.)  Thus, Defendant effectively agrees with the relief Strategic Decisions seeks -- preclusion of trial testimony, arguments and evidence on the categories Defendant's designee did not or could not testify about.  See QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 685, 698 (S.D. Fla. 2012).

**F.     The Deposition Testimony of Martin Luther King III**

Martin was deposed on May 27, 2014.  (Martin Dep., attached as Exhibit K.) At the deposition, Martin was provided a copy of the Agreement and asked about the services provided by Strategic Decisions.  He reviewed the Agreement then testified that Plaintiff "absolutely" performed the six deliverables listed in the Agreement.  (Id. at 73:15-21.)  He was asked about each one of the six deliverables and testified that Strategic Decisions performed each one of them, and elaborated on that testimony by providing examples of some of the tasks performed.  (Id. at

73:15-78:16.)   Martin testified further that Strategic Decisions performed at a "significant level"; that he was "tremendously satisfied" with the services provided; that he valued the work of Strategic Decision and considered Strategic Decisions a valuable resource for Defendant; that he never believed Strategic Decisions failed to perform under the Agreement; and that neither he nor Defendant ever expressed any concern or dissatisfaction with the services provided. (Id. at 73:15-78:16, 100:4-101:18.)

Martin also made clear that Defendant never contacted or interviewed him to discuss the Agreement or the services provided by Strategic Decisions. (Id. at 119:1-4, 170:18-23; Def. Dep. [Ex. I] at 167:13-174:11, 248:6-250:14.)   This despite the fact that Martin is a member of Defendant's board of directors, and defense counsel previously represented that Martin "is the person who could speak to these topics." (See Barnum Letter [Ex. D].)

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Standard

Rule 30(b)(6) requires a corporation, upon receipt of the deposition notice and the specified topics of inquiry, to designate, properly prepare and educate a witness who can testify about information known or reasonably available to the corporation. See Fed. R. Civ. P. 30(b)(6); OBE Ins. Corp., 277 F.R.D. at 687-91.

"A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation." <u>OBE Ins. Corp.</u>, 277 F.R.D. at 688. "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." <u>Id.</u> at 689.  The duty extends to matters reasonably known to the responding party.  <u>Id.</u>

"The mere fact that an organization no longer employs a person with knowledge on the specified topics does not relieve the organization of the duty to prepare and produce an appropriate designee." <u>Id.</u>  "A corporation in this scenario has an obligation to prepare an individual by having him or her review available materials or talk to others with knowledge." <u>Aldridge v. Lake Cnty. Sheriff's Office,</u> No.: 11-cv-3041, 2012 WL 3023340, at *2 (N.D. Ill. July 24, 2012).  A corporation, therefore, must "create an appropriate witness" from information available.  <u>Id.</u>  "Not only must the designee testify about facts within the corporation's collective knowledge, including the results of an investigation initiated for the purpose of complying with the 30(b)(6) notice, but the designee must also testify about the corporation's position, beliefs and opinions." <u>OBE Ins. Corp.,</u> 277 F.R.D. at 689.

Under the Federal Rules, "lack of knowledge" answers provided by a corporate designee binds the corporation at trial, and a corporation that provides a 30(b)(6) designee who testifies that the corporation does not know the answers to questions "will not be allowed effectively to change its answer by introducing evidence at trial." See id. at 690. Indeed, the purpose of discovery is to avoid trial by ambush, and Rule 30(b)(6) prevents the responding corporation from "sandbagging" the depositional process by conducting a "half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." Id. at 690.

Here, Strategic Decisions provided more than adequate notice to Defendant of the topics of inquiry for the Rule 30(b)(6) deposition. (See Exs. B, C and G.) Defendant did not object to any of the deposition topics in the Re-Notice and never sought a protective order. (Hr'g Tr. [Ex. J] at 71:20-72:23; see Dkt. generally.) By producing Bernice, who admitted that she knew nothing about Topics 2, 6, 7, 8, 9 and 10 of the Re-Notice, Defendant effectively "failed to appear" for the deposition. OBE Ins. Corp., 277 F.R.D. at 690 (stating that producing an unprepared witness is tantamount to a failure to appear). The failure to produce a Rule 30(b)(6) witness who is adequately educated and prepared to testify on designated topics to bind the corporation is sanctionable under Federal Rules 30(b)(6) and 37(d). See Fed. R. Civ. P. 37(d); OBE Ins. Corp., 277 F.R.D. at 690.

13

### B.     Prejudice to Strategic Decisions

Sanctions should be imposed here in the form of precluding Defendant from taking a position at trial or introducing evidence on those matters which Bernice could not or did not provide testimony.  Allowing Defendant to take a position at trial on these matters would significantly prejudice Strategic Decisions.  For example, Strategic Decisions has asserted claims for breach of contract, *quantum meruit*, unjust enrichment, and expenses of litigation.  Strategic Decisions' performance under the Agreement and the services it provided will be issues at trial.  Martin has testified that Strategic Decisions performed its obligations under the Agreement.  (Martin Dep. [Ex. K] at 73:15-78:16.)  Martin also provided extensive testimony regarding Defendant's use of the Investment Proposal, Defendant's efforts to obtain grants from JPMorgan Chase, the King Center Imaging Project, and the "leading role" Strategic Decisions took on each of these items.  (Id. at 78:17-86:25, 100:4-101:18. 175:13-176:3.)

This testimony goes to Topics 2, 6, 9, and 10 of the Re-Notice.  And Defendant previously represented that Martin is the person who could best speak to these topics.  (*See* Barnum Letter [Ex. D].)  Although Martin has testified that Strategic Decisions performed its contractual obligations, Defendant now wants to argue that Strategic Decisions failed to perform.  Defendant, however, has not

produced a witness to provide meaningful testimony in this regard. Defendant's designee even testified that she does not know who to ask about these topics. (Def. Dep. [Ex. I] at 173:21-174:11.)

The same is true regarding Topics 7 and 8. These topics relate directly to the claims in this case, including Strategic Decisions' claim for expenses of litigation. Although Bernice testified that her assistant, Eric Tidwell, made some effort in February 2013 to determine what services were provided, she did not know what those efforts were. (Id. at 268:14-271:1) Bernice also could not provide any testimony regarding the factors Defendant considered in deciding not to pay Strategic Decisions: "All I know is we were told that they were not going to be paid. We don't have the money. That's it. So what other reasons, I have no idea." (Id. at 230:19-232:19.)

Defendant should be barred from presenting any argument or evidence on these topics at trial. Without testimony from Defendant committing itself to a position on the topics identified by Strategic Decisions, Strategic Decision is unable to obtain discovery on issues that go to the heart of this case. The prejudice is substantial. Strategic Decisions is prejudiced by the exposure and risk of proceeding to trial without fact based testimony from an educated representative who reviewed the facts and provided Defendant's interpretation of the facts and

Defendant's beliefs and opinions as to why the facts should be construed in whatever manner Defendant may present at trial.  Stated differently, this exposes Strategic Decisions to ambush at trial and prejudices Strategic Decisions' prosecution of its case because Strategic Decisions does not know exactly what Defendant's corporate position actually is and what evidence Defendant may use to support it.  Strategic Decision should not be forced to proceed to trial without such information, particularly where Defendant admits that it did not make any effort to review relevant documents or contact or interview pertinent witnesses who were readily available -- including, Martin, Giles, Tidwell, and Stephen Rubino.

Moreover, discovery in this case was extended four times and is now closed. (See Dkt. generally.)  No party has asked the Court to re-open discovery as to these issues.  In addition to failing to produce a fully prepared corporate designee for its 30(b)(6) deposition, Defendant never identified or produced any other person to testify on the topics identified in the Re-Notice, and Bernice testified that she does not even know who might have relevant information regarding the services provided by Strategic Decisions.   (See Def. Dep. [Ex. I] at 167:13-174:11.) Furthermore, Defendant never designated additional witnesses or gave any indication that any other person *consented* to testify on its behalf.  See Fed. R. Civ. P. 30(b)(6).  Consequently, Strategic Decisions could not even depose whatever

16

witnesses might support Defendant's undisclosed corporate position on Topics 2, 6, 7, 8, 9 and 10 of the Re-Notice. QBE Ins. Corp., 277 F.R.D. at 697-98.

### C.    The Court Should Grant the Relief Requested.

The relief Strategic Decisions seeks in this Motion -- preclusion of Defendant's trial testimony on matters listed in its 30(b)(6) deposition notice but about which its corporate designee testified she had no knowledge -- is triggered either as a sanction (for failing to comply with the 30(b)(6) obligations) or as a natural consequence of not having a pre-trial position on certain topics. QBE Ins. Corp., 277 F.R.D. at 698; see Fed. R. Evid. 102, 104 and 403.

Where counsel for Defendant has conceded in open court that the answers given by its corporate designee at the deposition are binding, it would be fundamentally unfair if Defendant failed to provide 30(b)(6) testimony on certain matters, proclaimed a lack of its own knowledge and then at trial takes affirmative positions on these topics and seeks to introduce evidence against Strategic Decisions. See id. at 685, 698. Defense counsel at least impliedly recognized the inequity inherent in this type of trial scenario when he agreed that Defendant would be bound by Bernice's lack of knowledge. (Hr'g Tr. [ Ex. J] at 71:20-72:23); QBE Ins. Corp., 277 F.R.D. at 685, 698.

The requested relief is warranted for the reasons set forth above and because there are topics that Defendant admittedly and overtly failed to cover with its corporate designee in preparation of its Rule 30(b)(6) deposition.  (See, e.g., Def. Dep. [Ex. I] at 15:12-19:5, 28:22-30:1, 232:6-19.)   Therefore, the Court should enter an order:

- Barring Defendant from taking a position at trial on the topics on which Bernice did not or could not provide testimony, namely Topics 2, 6, 7, 8, 9, and 10 of the Re-Notice; and

- Prohibiting Defendant from making any arguments, calling any witnesses or introducing any exhibits on Topics 2, 6, 7, 8, 9, and 10 of the Re-Notice.

QBE Ins. Corp., 277 F.R.D. at 698, 700; Aldridge, 2012 WL 3023340, at *5.

In other words, Strategic Decisions requests that this Court ensure that Defendant stays true to its concession that it is "stuck" with the record it has created.  (Hr'g Tr. [Ex. J] at 72:20-23); Aldridge, 2012 WL 3023340, at *5.

Respectfully submitted, this the 27th day of January 2015.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

Suite 1600, Monarch Plaza
3414 Peachtree Rd., N.E.
Atlanta, Georgia   30326
Telephone: (404) 577-6000
Facsimile: (404) 221-6501
dransom@bakerdonelson.com
jervin@bakerdonelson.com

/s/  Damany F. Ransom
Damany F. Ransom
Georgia Bar No. 594774
Jennifer L. Ervin
Georgia Bar No.061076

*Counsel for Strategic Decisions, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14-point) approved by the Court in Local Rules 5.1 (C) and 7.1 (D).

This 27th day of January 2015.

/s/Damany F. Ransom
DAMANY F. RANSOM

## CERTIFICATE OF SERVICE

This is to certify that on this date a true and correct copy of this

Memorandum of Law in Support of Plaintiff Strategic Decisions' Motion *in Limine*

and/or for Sanctions was filed electronically with the Clerk of Court using the

CM/ECF system which will send e-mail notification of such filing to:

Eric L. Barnum
Cherie P. O'Reilly
Lindsey N. Berg
SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street
Atlanta, GA 30309

This 27th day of January 2015.

/s/Damany F. Ransom
DAMANY F. RANSOM