IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STRATEGIC DECISIONS, LLC, <br><br>        Plaintiff, <br><br> v. <br><br> THE MARTIN LUTHER KING, JR. CENTER FOR NONVIOLENT SOCIAL CHANGE, INC., <br><br>        Defendant. | Civil Action File No.: <br> 1:13-cv-2510-WSD |

## DEFENDANT THE MARTIN LUTHER KING, JR. CENTER FOR NONVIOLENT SOCIAL CHANGE, INC.'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* AND/OR FOR SANCTIONS

Eric L. Barnum
Georgia Bar No. 039305
ebarnum@schiffhardin.com
Lindsey N. Berg
Admitted *Pro Hac Vice*

SCHIFF HARDIN LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 437-7000
Facsimile: (404) 437-7100

*Attorneys for Defendant*
*The Martin Luther King, Jr. Center*
*for Nonviolent Social Change, Inc.*

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ...................................................................................1

II.   RELEVANT FACTUAL BACKGROUND .......................................3

    A.    Discovery ....................................................................................3

    B.    Ms. King's Deposition Testimony ...........................................5

        1.    Plaintiff's Category of Examination 2 .........................5

        2.    Plaintiff's Category of Examination 6 .........................6

        3.    Plaintiff's Category of Examination 7 .........................7

        4.    Plaintiff's Category of Examination 8 .........................7

        5.    Plaintiff's Categories of Examination 9 and 10 .................8

    C.    The May 19, 2014 Discovery Conference ................................9

    D.    Additional Discovery After the May 19, 2014 Discovery
        Conference ....................................................................................9

III.  ARGUMENT ......................................................................................11

    A.    30(b)(6) Deposition Standard ..................................................11

    B.    Ms. King Provided Meaningful Testimony on the Categories of
        Examination Set Forth in Plaintiff's Deposition Notice. .........13

    C.    Plaintiff Should Not be Permitted to Seek Preclusion Sanctions
        Because it Failed to Pursue Appropriate Discovery Procedures. ............16

    D.    Rule 30(b)(6) Testimony is Not a Judicial Admission That
        Ultimately Decides an Issue. ....................................................19

    E.    Plaintiff Has Not Demonstrated That it Will be Prejudiced if the
        King Center is Allowed to Present Evidence on its Categories 2, 6,
        7, 8, 9, or 10 ...............................................................................20

IV.   CONCLUSION ...................................................................................23

# TABLE OF AUTHORITY

*Page*

## Cases

*A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630 (7th Cir. 2001) ........................19

*Bank of N.Y. v. Meridian BIAO Bank of Tanzania Ltd.,* 171 F.R.D. 135 (S.D.N.Y. 1997).............................................................................................. 12, 21

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.,* 441 F.Supp.2d 695 (M.D. Pa. 2006) ............................................................................................20

*F.D.I.C. v. Conner,* 20 F.3d 1376 (5th Cir. 1994) ..................................................20

*Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534 (D. Nev. 2008).........................................................................................12

*In re Paoli R.R. Yard PBC Litig.,* 35 F.3d 717 (3d Cir. 1994) ...............................21

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* 92 F.Supp.2d 786 (N.D. Ill. 2000).......19

*Interstate Narrow Fabrics, Inc. v. Century USA, Inc.,* 218 F.R.D. 455 (M.D.N.C. 2003) .....................................................................................19

*Network Appliance, Inc. v. Bluearc Corp.,* 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005).................................................................................21

*Sprint Commc'n Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524 (D. Kan. 2006)................................................................................................12

*State Farm Mut. Auto Ins. Co. v. New Horizon, Inc.,* 250 F.R.D. 203 (E.D. Pa. 2008) ........................................................................................20

*Techsavies, LLC v. WDFA Marketing Inc.,* 2011 WL 723983, at *3 (N.D. Cal. Feb. 23, 2011) ...............................................................................18

*U.S. v. Taylor,* 166 F.R.D. 356 (M.D.N.C. 1996)...................................................20

*Wendt v. Host Int'l, Inc.,* 125 F.3d 806 (9th Cir. 1997)...........................................21

## Rules

Fed. R. Civ. Proc. 30(b)(6) ....................................................................................11

Fed. R. Civ. Proc. 37..............................................................................................12

COMES NOW Defendant The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc. (the "King Center") and hereby opposes Plaintiff Strategic Decisions, LLC's ("Plaintiff" or "Strategic Decisions") Motion *in Limine* and/or for Sanctions.

## I.
## <u>INTRODUCTION</u>

This Court has already denied Plaintiff's Partial Motion for Summary Judgment on its breach of contract claim. This Court has also denied Plaintiff's motion for discovery sanctions. Plaintiff now asks for what is tantamount to a directed verdict before trial even gets underway.

Plaintiff alleges that the King Center's 30(b)(6) witness, Ms. Bernice A. King ("Ms. King"), failed to provide meaningful testimony on behalf of the King Center on certain categories of examination, and seeks to preclude the King Center from presenting relevant evidence at trial regarding those categories. Specifically, Plaintiff seeks to preclude the King Center from presenting any evidence or testimony at trial regarding Plaintiff's performance pursuant to the parties' Consultative Services Agreement (the "Agreement"), as well as the King Center's basis for its decision not to pay Plaintiff on the alleged Agreement. A central issue in this case is whether Plaintiff adequately provided the deliverables set forth in the

Agreement.  Plaintiff's requested sanction is the equivalent to an order entering judgment in its favor.  This Court should deny Plaintiff's motion and permit the trial of this matter to be conducted on the merits.

Plaintiff's motion fails for several reasons.  First, Plaintiff distorts Ms. King's deposition testimony in order to support its argument that she failed to adequately testify regarding certain noticed categories.  In fact, Ms. King provided relevant, meaningful testimony on each category of examination set forth in Plaintiff's deposition notice.  Second, Plaintiff never requested the King Center produce another 30(b)(6) witness on the categories it now alleges Ms. King failed to adequately testify to, even after this Court extended the discovery period to allow Plaintiff to do so.  Rather, Plaintiff strategically chose not to pursue another 30(b)(6) deposition (or third-party deposition) and waited for discovery to close so that it could pursue these suspect evidentiary preclusion sanctions against the King Center.

Third, and contrary to Plaintiff's assertion in its motion, statements made by 30(b)(6) witnesses are not tantamount to judicial admissions.  Rather, the proper remedy for a corporation's departure at trial from its designee's deposition testimony is cross-examination, not preclusion.  Exclusion is a particularly draconian measure that is generally improper absent undue prejudice to the

2

opposing side.  Plaintiff's motion entirely fails to explain how it has been

prejudiced by Ms. King's alleged failure to provide meaningful testimony on its

designated examination categories.  Accordingly, this Court should deny Plaintiff's

motion and allow the King Center to present relevant evidence at the trial of this

matter.

## II.
## RELEVANT FACTUAL BACKGROUND

**A.   Discovery**

The parties served initial disclosures in this action in October 2013.  Amongst

others, Plaintiff identified Eric Tidwell, Stephen Rubino, and Terry Giles as

individuals likely having discoverable information regarding the Agreement, the

work allegedly performed by Plaintiff pursuant to the Agreement, and the King

Center's decision not to pay Plaintiff on the Agreement.  (Dkt. 14-1.)  Likewise,

the King Center also identified Eric Tidwell and Stephen Rubino as likely having

discoverable information regarding the claims and defenses asserted in this case.

*See* Defendant's Initial Disclosures, attached as Exhibit A.

Later that month, Plaintiff served subpoenas duces tecum to Stephen Rubino

and Terry Giles seeking numerous categories of documents.  Relevant here,

Plaintiff requested all documents (1) discussing or concerning Plaintiff;

(2) concerning amounts allegedly owed under the Agreement; (3) concerning or

regarding any investigation into Plaintiff or its performance under the Agreement; and (4) the results of any such investigation.  *See* Subpoenas, attached as Exhibit B.  Both Messrs. Rubino and Giles produced documents in response to Plaintiff's subpoenas.

On October 28, 2013, the King Center responded to Plaintiff's Interrogatory No. 1 that Eric Tidwell, Stephen Rubino, and Terry Giles may have knowledge of Plaintiff's performance and its demand for payment under the Agreement.  *See* the King Center's Responses to Plaintiff's First Interrogatories, attached as Exhibit C.

On April 18, 2014, Plaintiff served the King Center with a Notice of 30(b)(6) Deposition setting forth eighteen categories of examination.  (Dkt. 39.) On May 2, 2014, counsel for the King Center sent a letter to Plaintiff's counsel stating that the King Center would not produce a witness on Plaintiff's categories 2, 7, 8, and 9.  (Dkt. 97-5.)  In an attempt to resolve the dispute, the parties prepared and submitted a Second Joint Submission on Discovery Issues to this Court on May 5, 2014.  (Dkt. 97-7.)  In the Joint Submission, the King Center stated that it was unable to designate someone with reliable knowledge of (1) the services provided by Plaintiff, (2) the King Center's efforts to identify services provided by Plaintiff, or (3) the factual basis for the King Center's decision not to pay Plaintiff.  (Dkt. 97-7.)  The King Center further stated that Ms. King would

testify that the decision not to pay Plaintiff was made by former King Center Custodian Terry Giles, and that Ms. King did not play an active role in that decision. *Id.*

Following the completion of the parties' Joint Submission, Plaintiff served the King Center with a Re-Notice of 30(b)(6) Deposition on May 7, 2014. (Dkt. 44.) The Re-Notice contained 17 categories of examination. *Id.* Defense counsel advised counsel for Plaintiff that Ms. King would testify on all categories except category 14, and that Stephen DuBose would testify regarding that category. (Dkt. 97-9.)

**B.  Ms. King's Deposition Testimony**

Ms. King provided relevant and meaningful deposition testimony regarding each category set forth in Plaintiff's Re-Notice of Deposition. A summary of Ms. King's testimony relating to Plaintiff's categories of examination 2, 6, 7, 8, 9, and 10 is set forth below.

1.    Plaintiff's Category of Examination 2

Plaintiff's category of examination 2 requested testimony regarding the services provided by Plaintiff. *See* Dkt. 44. Ms. King testified during her deposition that there was a lack of tangible deliverables by which the King Center could determine the value of Plaintiff's services. *See* Excerpts of 30(b)(6)

Deposition, attached as Exhibit D at 272:9-18.  Ms. King further testified that the King Center lacked proof of what services Plaintiff allegedly performed on its behalf other than the investment prospectus prepared by Plaintiff.  *Id.* at 273:20-274:21.

When asked specifically about the six deliverables set forth in the Agreement, Ms. King testified that she did not know whether certain tasks were performed and had not seen documents indicating they had been performed.  *Id.* at 167:25-173:20. For example, Ms. King testified she had never seen a job description for the King Center's President and CEO position prepared by Plaintiff under Deliverable 2: Executive Coaching.  *Id.* at 168:25-169:6.  Similarly, Ms. King had never seen any document indicating Plaintiff developed a clear picture of the King Center's financial status under Deliverable 3: Resource and Development.  *Id.* at 170:2-6. Ms. King had also never seen evidence that Plaintiff had reviewed the status of all current funding relationships and prospective funders of the King Center or assessed the King Center's income streams, grants, sales from the gift shop, or online sales from the Salute to Greatness Dinner.  *Id.* at 170:7-15.

2.    Plaintiff's Category of Examination 6

Plaintiff's sixth category of examination sought testimony regarding the King Center's use of the investment proposal and/or any parts of the investment

proposal between January 2011 and the present.  *See* Dkt. 44.  Ms. King testified

on behalf of the King Center that she first saw the investment proposal at the time

she became CEO of the King Center in January 2012.  Exhibit D at 209:13-24.

She further testified that the investment proposal was the only service the King

Center could determine Plaintiff had performed on its behalf.  *Id.* at 273:20-274:21.

3.    Plaintiff's Category of Examination 7

Plaintiff's category of examination 7 requested testimony regarding the King

Center's efforts to identify the services provided by Plaintiff, all persons involved

in the efforts, and the results of the efforts.  (Dkt. 44.)  Ms. King testified that the

Executive Committee of the King Center's Board of Directors asked her to assign

the task of determining what services Plaintiff allegedly performed to the King

Center's Acting Managing Director, Eric Tidwell.  Exhibit D at 33:12-17; 268:21-

269:9.  She further testified that the only thing Mr. Tidwell was able to find

evidencing the services Plaintiff performed on the King Center's behalf was the

aforementioned investment proposal.  *Id.* at 269:13-271:1.

4.    Plaintiff's Category of Examination 8

Plaintiff's eighth category of examination sought testimony  regarding the

factual basis for the King Center's decision not to pay Plaintiff, all persons

involved in the decision, and all considerations underlying the decision.  (Dkt. 44.)

Ms. King testified that the King Center's former Custodian, Terry Giles, solely made the decision not to pay Plaintiff on the Agreement. Exhibit D at 230:8-231:19. She further testified that she did not speak with any representative of Plaintiff regarding the invoice submitted because the Board instructed her that Mr. Giles was going to handle the matter. *Id.* at 243:20-244:2.

5.    Plaintiff's Categories of Examination 9 and 10

Category of examination 9 requested testimony regarding the King Center's efforts to obtain grants from JPMorgan Chase ("JPMorgan") between 2010 and 2012, the results of those efforts, and the reasons the King Center believed the efforts were successful or not. Category 10 requested testimony regarding the King Center Imaging Project ("Imaging Project"), the King Center's partnership with JPMorgan, and Plaintiff's contribution to the project. (Dkt. 44.) Ms. King testified that JPMorgan worked with the King Center on the Imaging Project to help underwrite the cost for imaging certain documents. Exhibit D at 85:23-86:16. She further testified that Ali Marano led the Imaging Project for JPMorgan. *Id.* at 207:16-21. Ms. King testified that a website was created for the Imaging Project and that JPMorgan paid for that website. *Id.* at 210:12-17. She testified that when she became CEO of the King Center in January 2012, she learned that JPMorgan had discussed giving the King Center a donation of five million dollars, but that the

King Center never received the donation.  *Id.* at 217:10-219:10.  She further

testified that Terry Giles spoke with JPMorgan regarding the proposed donation.

*Id.* at 219:13-220:22.

**C.**  **The May 19, 2014 Discovery Conference**

Counsel for the parties participated in a discovery conference with the Court

on May 19, 2014 regarding the various issues set forth in the Joint Submission.  At

the conference, counsel for Plaintiff represented that the issue regarding the King

Center's 30(b)(6) deposition had been resolved as Ms. King was presented to

testify as to all topics in Plaintiff's Re-Notice of Deposition.  (Dkt. 97-11 at 71:20-

72:3.)  Counsel for Plaintiff did not offer an objection that Ms. King purportedly

failed to provide meaningful testimony on behalf of the King Center on any of the

categories set forth in its deposition notice.  Nor did counsel request that the King

Center produce a second 30(b)(6) witness.  *Id.*  Accordingly, the Court determined

that the issue was resolved.  *Id.* at 72:20-22.

**D.**  **Additional Discovery After the May 19, 2014 Discovery Conference**

Following the discovery conference and the King Center's submission of its

May 30, 2014 Status Report on Discovery (Dkt. 55.), this Court issued an order

extending the discovery period through July 25, 2014.  (Dkt.  57.)  The Court

explained that the extension was to allow Plaintiff to review documents produced

by the King Center and to depose the King Center (or one or more of its current or former representatives) if subsequent developments suggested that it was necessary to do so.  *Id.*

The King Center produced approximately 39,585 pages of documents to Plaintiff between May 30 and July 25, 2014.  *See* the King Center's Production Log, attached as Exhibit E.  Included in that production was the Affidavit of Terry Giles, which set forth Mr. Giles' inquiry into the services Plaintiff allegedly performed on behalf of the King Center and the reasons underlying the decision not to pay Plaintiff.  *See* Affidavit of Terry Giles, attached as Exhibit F.  Mr. Giles' Affidavit is consistent with Ms. King's testimony that he made the decision not to pay Plaintiff in his role as Custodian of the King Center, and that Ms. King was not involved in that decision.  *Id.*

Plaintiff did not seek to depose any additional King Center employees or representatives or third-party fact witnesses, including Mr. Giles, during the extended discovery period.  Discovery closed in this matter on July 25, 2014. Plaintiff did not file its motion for preclusion sanctions based on the alleged deficient 30(b)(6) testimony until five months later on January 27, 2015.  (Dkt. 97.)

# III.
## ARGUMENT

Plaintiff's motion argues that sanctions should be imposed precluding the King Center from introducing evidence at trial on those matters for which Ms. King did not provide "meaningful" deposition testimony.  Motion at p. 14. Plaintiff contends that allowing the King Center to take a position at trial on those matters would significantly prejudice it, and that without testimony from the King Center committing itself on the topics identified by Plaintiff, Plaintiff cannot obtain discovery on "issues that go to the heart of this case."  *Id.* at pp. 14-15.  As discussed below, these arguments are meritless and this Court should deny Plaintiff's motion in *limine* and/or for sanctions.

### A.    30(b)(6) Deposition Standard

Federal Rule of Civil Procedure ("Rule") 30(b)(6) provides that a party may notice the deposition of a corporation and must describe with reasonable particularity the matters for examination.  Fed. R. Civ. Proc. 30(b)(6).  The named organization must then designate one or more of its officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, to testify regarding information known or reasonably available to the organization.  *Id.*  A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide binding answers on behalf of the corporation.

11

*Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 538 (D.

Nev. 2008).  However, a Rule 30(b)(6) designee is not required to have personal

knowledge on the designated subject matter.  *Sprint Commc'n Co., L.P. v.*

*Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D. Kan. 2006).  Instead, the corporation

has "a duty to make a conscientious, good-faith effort to designate knowledgeable

persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively

answer questions about the subject matter." *Great Am. Ins. Co. of N.Y.,* 251 F.R.D.

at 539.  The duty to produce a prepared witness on designated topics extends to

matters not only within the personal knowledge of the witness but on matters

reasonably known by the responding party. *Id.*

Rule 37(d) allows a court to impose various sanctions for a party's failure to

comply with Rule 30(b)(6).  Fed. R. Civ. Proc. 37(d).  Such sanctions include

"prohibiting the disobedient party from supporting or opposing designated claims

or defenses, or from introducing designated matters in evidence."  Fed. R. Civ.

Proc. 37(b)(2)(A)(ii).  However, in order for the court to impose sanctions, the

inadequacies in the deponent's testimony must be egregious and "not merely

lacking in desired specificity in discrete areas." *Bank of N.Y. v. Meridian BIAO*

*Bank of Tanzania Ltd.,* 171 F.R.D. 135, 151 (S.D.N.Y. 1997).  Preclusion is an

extreme remedy, reserved only for flagrant discovery abuses. *Id.* at 151-52.

**B.   Ms. King Provided Meaningful Testimony on the Categories of Examination Set Forth in Plaintiff's Deposition Notice.**

Plaintiff alleges that Ms. King failed to provide meaningful testimony with respect to its second, six, seventh, eighth, ninth and tenth categories of examination.  Motion at pp. 7-9.  However, this Court should deny Plaintiff's motion *in limine* and/or for sanctions because Ms. King provided meaningful testimony on all the categories set forth in Plaintiff's Re-Notice of Deposition.

As to Plaintiff's second category of examination, seeking testimony regarding the services Plaintiff allegedly provided to the King Center, Ms. King testified that there was a lack of tangible deliverables by which the King Center could make that determination.  She also testified that the investment proposal was the only service the King Center was able to determine Plaintiff performed on its behalf.  Further, when asked specifically about the six deliverables set forth in the Agreement, Ms. King testified that she did not know whether certain tasks had been performed and that she had not seen any documents indicating they were performed. Accordingly, Ms. King's deposition testimony makes clear that the King Center was unable to determine what services Plaintiff performed on its behalf under the Agreement, if any – a determining factor in Giles' decision not to pay on the

Agreement.  While Plaintiff may wish to preclude the jury from hearing this

evidence, that is an improper basis on which to seek preclusion sanctions.

Similarly, Ms. King provided adequate testimony on Plaintiff's sixth category

of examination, which requested testimony regarding the King Center's use of the

investment proposal and/or parts of the investment proposal between January 2011

and the present.  Ms. King testified that she first saw the investment proposal at the

time she became CEO of the King Center in January 2012.  She further testified

that the investment proposal was the only service the King Center was able to

determine that Plaintiff performed on its behalf.   Therefore, Ms. King's testimony

makes clear that because she never saw the investment proposal prior to January

2012, despite being a member of the King Center's Board prior to that time, the

King Center has not used the proposal since 2012.  This testimony provides a

meaningful response to Plaintiff's category of examination six.

Likewise, Ms. King provided meaningful testimony with respect to Plaintiff's

categories of examination 7 and 8.  Category 7 sought testimony regarding the

King Center's efforts to identify the services provided by Plaintiff, all persons

involved in those efforts, and the results of those efforts.  Category 8 requested

testimony regarding the factual basis for the King Center's decision not to pay

Plaintiff, all persons involved in the decision, and all considerations underlying the decision.

Ms. King testified that the Executive Committee of the King Center's Board of Directors assigned Eric Tidwell, the King Center's Acting Managing Director, the task of determining what services Plaintiff performed on its behalf. According to Ms. King, Mr. Tidwell was unable to find evidence of Plaintiff's services other than the investment proposal. Further, Ms. King testified that Terry Giles made the decision not to pay Plaintiff on the Agreement in his role as Custodian of the King Center. She explained that she did not speak with Plaintiff regarding the invoices it submitted because the Board delegated that task to Mr. Giles. This testimony adequately and meaningfully responds to Plaintiff's seventh and eighth categories of examination.

Finally, Ms. King testified on the King Center's behalf regarding Plaintiff's categories of examination nine and ten. Category nine requested testimony regarding the King Center's efforts to obtain grants from JPMorgan between 2010 and 2012, the results of those efforts, and the reasons the King Center believed the efforts were successful or not. Category ten sought testimony regarding the Imaging Project, the King Center's partnership with JPMorgan, and Plaintiff's contribution to the Imaging Project.

Ms. King testified that JPMorgan worked with the King Center on the Imaging Project to help underwrite the cost of imaging certain documents. She further testified that a website was created for the Imaging Project that was paid for by JPMorgan. She testified that when she became CEO of the King Center in January 2012, she learned that JPMorgan was considering making a donation to the King Center in the amount of five million dollars. However, Ms. King testified the King Center never received that donation. Terry Giles, as Custodian of the King Center, was tasked with speaking to JPMorgan concerning that donation.

Ms. King's testimony undercuts Plaintiff's breach of contract claim. Because it does, Plaintiff would like to keep the jury from hearing or considering it as evidence in the case. Plaintiff may not like Ms. King's testimony on the categories set forth above, but that is an improper basis for the imposition of a preclusion sanction.

**C.** **Plaintiff Should Not be Permitted to Seek Preclusion Sanctions Because it Failed to Pursue Appropriate Discovery Procedures.**

Even if this Court determines that Ms. King's deposition testimony was inadequate with respect to any of the categories in Plaintiff's deposition notice, Plaintiff's motion for preclusion sanctions should still be denied because Plaintiff intentionally chose not to pursue discovery mechanisms available to it. Plaintiff's

own initial disclosures indicate it was aware of Eric Tidwell's, Stephen Rubino's, and Terry Giles' roles in determining the services Plaintiff allegedly performed on the King Center's behalf and the King Center's decision not to pay Plaintiff on the Agreement as early as October 2013.  Further, the King Center's interrogatory responses, served that same month, listed Messrs. Tidwell, Rubino, and Giles as individuals likely having relevant information regarding the services Plaintiff performed under the Agreement and the King Center's decision not to pay Plaintiff.

While Plaintiff served subpoenas on Messrs. Rubino and Giles, it made a tactical decision not to depose either of them in this case.  The King Center should not be sanctioned for Plaintiff's failure to conduct adequate and thorough discovery.   Moreover, counsel for Plaintiff did not make any representation at the May 19, 2014 discovery conference that Ms. King failed to provide meaningful testimony on behalf of the King Center.  Rather, Plaintiff's counsel indicated that Ms. King testified as to every category set forth in its deposition notice.  Had Plaintiff believed the King Center failed to present a knowledgeable witness at the 30(b)(6) deposition, it could have sought to compel, or simply requested, the King Center produce an additional witness.  It elected not to do so.

17

This Court extended the discovery period through July 25, 2014 to allow Plaintiff to conduct additional depositions of the King Center, if necessary. During that extended discovery period, the King Center produced approximately 39,000 additional pages of documents to Plaintiff, including the Affidavit of Terry Giles. Mr. Giles' Affidavit set forth his inquiry into the services Plaintiff allegedly performed on the King Center's behalf, and the reasons underlying his decision not to pay Plaintiff on the Agreement. Still, Plaintiff made no effort to depose Mr. Giles, or any other representative of the King Center, prior to the close of discovery on July 25, 2014.

Instead, Plaintiff chose to allow discovery to close so that it could seek preclusion sanctions against the King Center months later. This Court should deny Plaintiff's blatant attempt to dictate a directed verdict in its favor at trial by precluding the King Center from presenting relevant evidence regarding Plaintiff's performance under the Agreement. *See Techsavies, LLC v. WDFA Marketing Inc.,* No. C10-1213 BZ, 2011 WL 723983, at *3 (N.D. Cal. Feb. 23, 2011) (noting that "[d]iscovery disputes should be resolved soon after the problem appears, rather than by exclusionary and sanctions motions filed after discovery has terminated."). As in *Techsavies,* this Court should deny Plaintiff's motion for sanctions because

Plaintiff "chose to file this motion for sanctions rather than take advantage of the discovery extension the Court offered." *Id.*

**D.  Rule 30(b)(6) Testimony is Not a Judicial Admission That Ultimately Decides an Issue.**

This Court should further deny Plaintiff's motion for preclusion sanctions because there is no prohibition against a corporate party providing evidence different or beyond that which was provided at its 30(b)(6) deposition.  *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.,* 218 F.R.D. 455, 462 (M.D.N.C. 2003).  Plaintiff "apparently construes [Rule 30(b)(6)] as absolutely binding [the King Center] to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible." *A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630, 637 (7th Cir. 2001).  This is simply incorrect.

A corporation may be bound by the testimony of its Rule 30(b)(6) designee in the same sense that any witness is "bound" by his prior testimony.  *See Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* 92 F.Supp.2d 786, 791 (N.D. Ill. 2000) (Rule 30(b)(6) testimony "can be contradicted and used for impeachment purposes," but it "is not a judicial admission that ultimately decides an issue.").  As a result, the proper cure for a corporation's departure from the testimony of its 30(b)(6) designee is cross-examination, not preclusion.  *U.S. v. Taylor,* 166 F.R.D. 356, 362

n. 6 (M.D.N.C. 1996) (Rule 30(b)(6) deposition testimony "may be explained and explored through cross-examination as to why the opinion or statement was altered."). *See also State Farm Mut. Auto Ins. Co. v. New Horizon, Inc.,* 250 F.R.D. 203, 213 n. 6 (E.D. Pa. 2008) (At trial a court may permit "new evidence and allow the [corporation's] explanation to be submitted to the jury along with the earlier [30(b)(6)] testimony.").

Here, the King Center cannot be precluded from presenting evidence at trial that differs from or supplements its 30(b)(6) testimony. Rather, the King Center should be permitted to present its evidence and Plaintiff provided the opportunity to conduct cross-examination of any allegedly conflicting or new testimony.

**E.   Plaintiff Has Not Demonstrated That it Will be Prejudiced if the King Center is Allowed to Present Evidence on its Categories 2, 6, 7, 8, 9, or 10.**

To exclude evidence at trial in the matter requested by Plaintiff would effectively preclude the King Center from offering any evidence other than that which Plaintiff seeks to present in support of its case. A sanction that essentially denies a party the ability to prosecute or defend an action on the merits is a "draconian remedy and a remedy of last resort." *F.D.I.C. v. Conner,* 20 F.3d 1376, 1380 (5th Cir. 1994). Preclusion is an extreme remedy, reserved only for flagrant discovery abuses. *See Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.,*

441 F.Supp.2d 695, 722 n. 17 (M.D. Pa. 2006) (noting that a court "may preclude a party from presenting evidence on an issue based on a discovery failure solely if the party fails to obey an order to provide discovery."); *Bank of N.Y.,* 171 F.R.D. at 151-52 (declining to impose preclusion sanctions despite failure to prepare witness on certain Rule 30(b)(6) topics because "sanctions that prohibit a party from introducing evidence are typically reserved for only flagrant discovery abuses.").

Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side. *Network Appliance, Inc. v. Bluearc Corp.,* No. C 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005). *See also In re Paoli R.R. Yard PBC Litig.,* 35 F.3d 717, 791 (3d Cir. 1994) ("The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence."); *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997) (same).

Here, Plaintiff has failed to demonstrate that it will suffer undue prejudice if the King Center is permitted to present evidence at trial on the categories for which Plaintiff alleges Ms. King did not adequately testify. Plaintiff's motion argues that it is prejudiced by the exposure and risk of proceeding to trial without fact based

testimony from an educated representative of the King Center. *Id.* at p. 15. There is no merit to this assertion.

Plaintiff was aware that Messrs. Tidwell, Rubino, and Giles had relevant information pertaining to its performance under the Agreement and the reasons underlying the King Center's decision not to pay Plaintiff on the Agreement since it filed this case. Plaintiff sought and received documents from Messrs. Giles and Rubino relevant to that point. Moreover, Ms. King testified during her deposition that Mr. Giles made the decision not to pay Plaintiff on the Agreement and that she was not involved in that decision. Accordingly, Plaintiff had every opportunity to depose Mr. Giles, or any other representative of the King Center, and it chose not to.

Plaintiff's contention that "Defendant never identified or produced any other person to testify on the topics in the Re-Notice" seeks to mislead this Court. Motion at p. 16. Plaintiff never indicated that it wished to conduct an additional 30(b)(6) deposition. The King Center is not responsible for producing a witness for a deposition Plaintiff never asked for. Hence, the King Center should not be punished for Plaintiff's failure to depose Mr. Giles in order to gain the information it now contends will prejudice it at trial. Consequently, this Court should deny

Plaintiff the draconian remedy of precluding the King Center from defending this case on the merits at trial.

## IV.
## <u>CONCLUSION</u>

For the foregoing reasons, the King Center respectfully requests this Court deny Plaintiff's motion *in limine* and/or for sanctions and permit the King Center to present relevant evidence at the trial of this matter.

Respectfully submitted this 13th day of February, 2015.

By:    *s/ Eric L. Barnum*
     Eric L. Barnum
     Georgia Bar No. 039305
     ebarnum@schiffhardin.com
     Lindsey N. Berg
     Admitted *Pro Hac Vice*
     SCHIFF HARDIN LLP
     One Atlantic Center, Suite 2300
     1201 West Peachtree Street
     Atlanta, GA  30309
     Telephone:(404) 437-7000
     Facsimile: (404) 437-7100

     *Attorneys for Defendant*
     *The Martin Luther King, Jr. Center*
     *for Nonviolent Social Change, Inc.*

## <u>CERTIFICATE OF COMPLIANCE / SERVICE</u>

In accordance with LR 7.1(D), NDGa., the undersigned counsel hereby certifies that the foregoing document was prepared in Times New Roman 14 point font, which is approved by the Court in Local Rule 5.1(B).

I further certify that on this date **DEFENDANT THE MARTIN LUTHER KING, JR. CENTER FOR NONVIOLENT SOCIAL CHANGE, INC.'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* AND/OR FOR SANCTIONS** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Damany F. Ransom
Jennifer L. Ervin
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Monarch Plaza, Suite 1600
3414 Peachtree Rd., N.E.
Atlanta, GA  30326

This 13th day of February, 2015.


　　　　　　　　　　　　*s/ Eric L. Barnum*
　　　　　　　　　　　　Eric L. Barnum

42752-0000
AT\230049528.2