IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STRATEGIC DECISIONS, LLC,

              **Plaintiff,**

      **v.**

THE MARTIN LUTHER KING, JR.
CENTER FOR NONVIOLENT
SOCIAL CHANGE, INC.,

              **Defendant.**

1:13-cv-2510-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc.'s ("Defendant" or the "King Center") Motions in Limine [107, 108, 109], and Plaintiff Strategic Decisions, LLC's ("Plaintiff") Motion in Limine [110] and Motion For Leave to Amend Proposed Pretrial Order [122].

## I.    BACKGROUND

### A.    Facts

Plaintiff is a management-consulting firm based in Henderson, Nevada, that specializes in experiential training, management support, staff development, executive coaching, strategic planning, and organizational restructuring.  Plaintiff was founded by Jennifer Henderson ("Henderson") and her late husband, Thomas

Bailey ("Bailey").  Defendant is a nonprofit organization based in Atlanta, Georgia, that serves as a traditional memorial for Dr. Martin Luther King, Jr., and a programmatic institution dedicated to educational and social change through nonviolent means.

In the fall of 2010, Defendant entered into a "Consultative Services Agreement" (the "Agreement") with Plaintiff, under which Plaintiff agreed to provide Defendant with the following organizational development "deliverables" to stabilize Defendant's business and achieve sustainable operations:

- Develop and implement a reality-based plan of action to guide the King Center over the next 12-18 months;

- Enhance the leadership and management acumen of the President and CEO;

- Secure immediate and intermediate funding while positioning the King Center for long-term support from a diverse base of funders and donors;

- Recruit and support senior management;

- Develop and market a set of signature programs with donors, foundations, and corporations that define the new King Center; and

- Affirm past relationships and build new relationships with key individuals and organizations in the Civil Rights, Faith-Based, Labor, Social Justice, Human Rights Communities, and Socially-Responsible Corporations.

(Agreement [1.1] at 2-4).

The term of the Agreement was from December 6, 2010, to December 31, 2011.  (Id. at 6).  Plaintiff agreed to provide Defendant with six consultant days a month at a fee of $2,500 per day for a total monthly rate of $15,000, plus expenses for travel, hotels, and meals in the amount of $3,000 per month.  (Id.).

On August 10, 2011, Plaintiff sent Defendant an invoice, in the amount of $103,840, for services performed under the Agreement from December 2010 to July 2011.  Defendant did not pay the amount stated on the August 10, 2011, invoice.  On December 1, 2011, Plaintiff sent Defendant another invoice, in the amount of $216,000, for services performed under the Agreement from December 2010 to December 2011.  Defendant has not paid Plaintiff for invoiced services provided under the Agreement.

B.   Procedural History

On July 30, 2013, Plaintiff filed a four (4) count Complaint against Defendant for breach of contract, *quantum meruit*, unjust enrichment and attorneys' fees.  Plaintiff seeks $216,000 as compensation for the services performed pursuant to the Agreement, plus pre-judgment interest, post-judgment interest, and attorneys' fees under O.C.G.A. § 13-6-11.

On September 11, 2014, Defendant moved for summary judgment on all the claims raised in Plaintiff's Complaint on the ground that Defendant is not liable for

actions taken by Terry Giles ("Giles"), the custodian appointed to manage

Defendant as a condition of a settlement reached with Defendant's board of

directors regarding an unrelated lawsuit.  Defendant argued further that it is

vicariously immune from liability for the custodian's decision not to pay Plaintiff.

Defendant argued, in the alternative, that the Court should grant summary

judgment on Plaintiff's breach of contract claim because Plaintiff did not sign the

Agreement until August 2011.  Defendant also moved for summary judgment on

Plaintiff's claim for attorneys' fees, arguing that summary judgment should be

granted because there is no evidence that Defendant acted in bad faith or was

stubbornly litigious.  On October 13, 2014, Plaintiff moved for partial summary

judgment on its breach of contract claim.

      On December 5, 2014, the Court denied the parties' motions for summary

judgment.  The Court concluded that Giles did not have the authority to "reject"

the Agreement, and his decision to "reject" the Agreement did not extinguish

Defendant's obligation to pay for services provided under the Agreement.  The

Court also denied Defendant's Motion for Summary Judgment on Plaintiff's

claims for breach of contract and attorneys' fees because, in the absence of a

written agreement, acceptance of a contract can be inferred from performance, and

Defendant's litigation conduct in this case may support an award of attorneys' fees.

The Court denied Plaintiff's Motion for Partial Summary Judgment on its breach of contract claim because Plaintiff failed to identify undisputed facts sufficient to show that it provided the required "deliverables" under the Agreement.

On January 27, 2015, Plaintiff filed its "Motion in Limine and/or for Sanctions" to preclude Defendant from introducing evidence, or taking a position at trial, on topics 2, 6, 7, 8, 9 and 10 of the Notice to Take the Deposition of Defendant's 30(b)(6) Witness.  Plaintiff argued that Defendant should be sanctioned because its current CEO, Bernice King ("Bernice"), was not prepared to testify at her deposition on the following Rule 30(b)(6) topics (the "Rule 30(b)(6) Topics"):

2.  The services provided by Strategic Decisions.

. . .

6.  Defendant's use of the Investment Proposal and/or any parts of the Investment Proposal between January 2011 and present.

7.  Defendant's efforts to identify the services provided by Strategic Decisions; all persons involved in the efforts; and the results of the efforts.

8.  The factual basis for Defendant's decision not to pay Strategic Decisions; all persons involved in the decision; and all considerations underlying the decision, including all facts, events, documents, discussions and meetings relevant to the decision.

9.  Defendant's efforts to obtain grants from JPMorgan Chase between 2010 and 2012; the results of these efforts; and the reasons you believe the efforts were or were not successful.

10. The King Center Imaging Project, including the funding, development and implementation of the Project; Defendant's partnership with JPMorgan Chase; and Strategic Decisions' contributions to the project.

On May 5, 2015, the Court granted Plaintiff's motion, concluding that sanctions were appropriate because Defendant failed to provide a knowledgeable representative to testify about the Rule 30(b)(6) Topics. The Court thus precluded Defendant from introducing evidence at trial that contradicts, alters, supplements, amends or explains Bernice's testimony on the Rule 30(b)(6) Topics.

On April 27, 2015, the parties filed their Motions in Limine. The Court now addresses each category of evidence that the parties seek to exclude.

## II.    DISCUSSION

### A.    Defendant's Motions in Limine

#### 1.    Settlement Negotiations

Defendant seeks to exclude the following documents on the ground that the documents are not admissible under Rule 408 of the Federal Rules of Evidence:

- Emails between the King Center's managing director, Eric Tidwell ("Tidwell"), and Plaintiff's principals, Bailey and Henderson, regarding a proposed installment plan that Defendant contemplated to pay for services allegedly provided by Plaintiff.

- A letter from Bailey to Stephen Rubino ("Rubino") offering proposed terms for a settlement between the parties.

- Email from Tidwell to Bernice and Dexter King ("Dexter") that forwards

settlement communications between Tidwell, Bailey and Henderson regarding the proposed installment plan.

- Email from Tidwell to Bernice and Dexter that attaches a letter sent to Henderson regarding the proposed installment plan and includes a settlement check.

- Email from Tidwell to Bernice and Dexter forwarding an exchange between Rubino and Bailey.  The email attached a memorandum entitled "King Center Settlement Offer" that states, "I am making the following settlement offer [] on behalf of Strategic Decisions LLC.  As a resolution to our outstanding invoice with the King Center . . . ."

(See Proposed Pretrial Order Attach. G-1, Exs. 19, 136, 143, 144, 145, 146, 180)

(the "Amount Discussion Exhibits").

Rule 408 of the Federal Rules of Evidence provides:

(a) Prohibited Uses.  Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim . . . .

(b) Exceptions.  The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

The Eleventh Circuit has held that "the test for whether statements fall under this rule is whether the statements or conduct were intended to be part of the negotiations toward compromise."  See Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990).  "For Rule 408 to apply, there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim."  Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985).  A dispute regarding the amount owed under a contract also may serve as a basis for Rule 408 to apply.  See Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1353 (11th Cir. 2011).

Plaintiff argues that Rule 408 does not apply to the documents Defendant seeks to exclude because the validity or amount of Plaintiff's claim is not disputed. In the alternative, Plaintiff argues that the settlement communications should be admitted to show that Defendant acted in bad faith, was stubbornly litigious, and caused unnecessary trouble and expense under O.C.G.A. § 13-6-11.

A review of the Amount Discussion Exhibits shows that over a year-long period there were various discussions between representatives of Defendant, generally Tidwell, and representatives of Plaintiff, generally Henderson, regarding the invoices Plaintiff sent to Defendant for its services under the Agreement.  The discussions center on the availability of funds for Defendant to pay the "debt" or

8

"original balance" of the invoices, including that "the plan was to retire the outstanding obligation from revenues generated through some of the initiatives and relationships planned under the engagement agreement, [but] unfortunately most of that never came to fruition." (Ex. 19 at 1). The communications show further that Defendant did not have funds available to pay the amounts invoiced by Plaintiff and thus they discussed with Plaintiff the desire to agree upon a compromised amount to pay Plaintiff for the services billed to Defendant, and the possibility of paying this reduced amount in installments. The communications do not reflect any admission that the amount billed by Plaintiff was what was due and owing, nor do they expressly discuss that the amount owed is disputed.

There is a reference in one email communication regarding the "conflict of interest issues, the lack of proper board approval for the engagement agreement and the placement of an interim CEO" to explain why "no compensation was initially offered last year," and expressing hope that "this matter can be settled at half of the original balance." (Id. at 2). The emails contained in Exhibit 19, especially the April 12, 2013, email from Tidwell to Henderson, are, at best, ambiguous regarding whether there was a dispute between the parties as to the validity of the claim or the amount owed. There are a few—very few—short references that may suggest a dispute over the amount of the claim, but when that

"dispute" arose, and whether it existed when some, or all, of the Amount Discussion Exhibits were authored, is unknown.

The question, in considering if Rule 408 excludes the Amount Discussion Exhibits, is whether there is a dispute over the validity of the claim asserted by Plaintiff or a dispute over the amount owed for services rendered.  On the record presented to the Court generally, and in the Amount Discussion Exhibits specifically, that simply is a difficult question to answer.  The Court cannot at this time determine if the Amount Discussion Exhibits are admissible or required to be excluded under Rule 408.  The testimony and evidence at trial will provide context for deciding whether at the time one or all of the Amount Discussion Exhibits were authored, there was a dispute over the validity or amount of Plaintiff's claim.  Defendant's motion to exclude the Amount Discussion Exhibits is thus denied.  Defendant may assert objections to the Amount Discussion Exhibits at trial.

2.    Bifurcation

Defendant moves in limine to bifurcate the trial into two phases, and requests the Court to preclude in the liability phase of the trial evidence regarding Plaintiff's claim for the amount of attorneys' fees.  Defendant contends that the jury should be allowed to hear evidence of the amount of attorneys' fees only if it finds that Defendant is liable for breach of contract, and Plaintiff is entitled to

recover attorneys' fees under O.C.G.A. § 13-6-11.  Plaintiff does not oppose Defendant's request to bifurcate the trial into two phases.

Rule 42(b) of the Federal Rules of Civil Procedure provides that "the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim."  See Fed. R. Civ. P. 42(b).  The decision to bifurcate is committed to the sound discretion of the Court.  See Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 608 (N.D. Ga. 1989); Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).

The conduct for which an award of attorneys' fees may be justified is intertwined with the underlying liability issues in this case.  The evidence of the amount of attorneys' fees Plaintiff incurred should not be extensive and should not require an unreasonable amount of time at trial.  The Court's interest in judicial economy is not served by bifurcating the trial into separate phases when, as here, the issues sought to be bifurcated are interdependent, and separate phases of the trial will not efficiently use the jury's time.  The Court also concludes that declining to bifurcate the attorneys' fees claim will not prejudice Defendant or Plaintiff.  The Court concludes here that bifurcation is not warranted.  Defendant's motion to bifurcate the trial is denied.

3.     Evidence of Defendant's Alleged Discovery Abuse

Defendant seeks to exclude certain unidentified exhibits that Defendant argues Plaintiff intends to introduce at trial.  These exhibits, Defendant claims, refer to Defendant's alleged discovery abuse, and are not relevant under Rules 401 and 402 of the Federal Rules of Evidence.  Defendant argues that the exhibits also should be excluded under Rule 403 of the Federal Rules of Evidence because their probative value is substantially outweighed by the danger of unfair prejudice.  Defendant does not identify or describe the specific documents it seeks to exclude, and does not explain what information in them is not relevant or is prejudicial.  The Court is thus unable to determine whether the documents are relevant or if their probative value is substantially outweighed by the danger of unfair prejudice.  Defendant's motion to exclude evidence of its alleged discovery abuse is denied at this time because the motion contains conclusory assertions that are not supported by facts, and because Defendant has failed to identify with specificity and particularity, the documents it seeks to exclude.  An objection to specific documents may be asserted at trial.

4.     Adams Litigation

Defendant next seeks to exclude certain exhibits Defendant claims Plaintiff identified in the parties' Proposed Pretrial Order on the ground that these exhibits

refer to a separate lawsuit filed by Defendant's interim Chief Operating Officer, Robert Adams, against Defendant and Bernice.  Defendant argues that these exhibits are not relevant under Rules 401 and 402 of the Federal Rules of Evidence.  Defendant also argues that the exhibits should be excluded under Rule 403 of the Federal Rules of Evidence because their probative value is substantially outweighed by the danger of unfair prejudice.  Defendant does not identify or describe the specific documents it seeks to exclude.  Defendant also does not explain what information contained in these documents is not relevant or is prejudicial.  The Court is thus unable to determine whether the documents are relevant or if their probative value is substantially outweighed by the danger of unfair prejudice.  Defendant's motion to exclude evidence regarding Robert Adams' lawsuit is denied at this time because the motion contains conclusory assertions that are not supported by facts, and Defendant has failed to identify with specificity and particularity, the documents it seeks to exclude.  An objection to specific documents may be asserted at trial.

      B.    <u>Plaintiff's Motion in Limine</u>

          1.    <u>Fee Arrangement With Counsel</u>

Plaintiff seeks to exclude evidence of Defendant's fee arrangement with its counsel, including that Defendant is being represented in this matter on a *pro bono*

basis.  Defendant argues that counsel's representation of Defendant is relevant to

(i) whether Plaintiff performed the tasks required by Deliverable 3 of the

Agreement, and (ii) the reasons that Giles decided not to pay Plaintiff for the

services allegedly provided under the Agreement.  Deliverable 3 of the Agreement

required Plaintiff to "[s]ecure immediate and intermediate funding while

positioning the King Center for long-term support from a diverse base of funders

and donors."  (Agreement at 2).  Bernice testified that among the reasons Giles

decided not to pay Plaintiff was that Defendant could not afford to do so.  (See

Bernice Dep. 231:20-25).

Rule 401 defines "relevant evidence" as "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence."  See

Fed. R. Evid. 401.  Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by
> the Constitution of the United States, by Act of Congress, by these
> rules, or by other rules prescribed by the Supreme Court pursuant to
> statutory authority.  Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Defendant does not explain why its fee arrangement with counsel is relevant

to show that Plaintiff failed to secure funding and donor support for the King

Center.  The Court concludes that Defendant's fee arrangement with counsel does

not "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  See Fed. R. Evid. 401.[1]  Plaintiff's motion to exclude evidence of Defendant's fee arrangement with counsel is granted.

### 2. Non-Party Witnesses

Plaintiff seeks to exclude all non-party witnesses from the courtroom during trial.  Defendant does not oppose this request.  Rule 615 of the Federal Rules of Evidence provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses."  See Fed. R. Evid. 615; United States v. Ratfield, 342 F. App'x 510, 512 (11th Cir. 2009).  Plaintiff's motion to exclude non-party witnesses from the courtroom during trial is granted.  Witnesses shall be sequestered.

### 3. Issues Resolved at Summary Judgment

Plaintiff seeks to prohibit Defendant from introducing evidence or making arguments regarding the following issues that were resolved by the Court's December 5, 2014, Order ("December 5th Order"):

---

[1] Evidence of Defendant's inability to pay may be admissible to show that Defendant developed the position that services were not provided to disguise its inability to pay for services that were rendered.  The Court will need more factual context at trial to decide if evidence of an inability to pay is admissible.

- Defendant did not have the authority to overrule Giles' decision not to pay Plaintiff for the alleged services provided under the Agreement;

- Defendant is not liable for Giles' decisions during Giles' time as custodian of the King Center;

- Defendant is vicariously immune for Giles' actions; and

- Plaintiff was required to obtain leave from the Fulton County Superior Court before filing this lawsuit.

In its December 5th Order, the Court decided, as a matter of law, that Giles did not have the authority to "reject" the Agreement, and his decision to "reject" the Agreement did not extinguish Defendant's obligation to pay for services rendered under the Agreement. The Court also rejected Defendant's vicarious immunity defense, and found that Plaintiff was not required to obtain leave from the Fulton County Superior Court before filing this lawsuit. Because these questions of law were decided by the Court in its Order denying Defendant's Motion for Summary Judgment, Defendant is prohibited from introducing evidence or making arguments that contradict the Court's December 5th Order. See Feld v. Feld, 688 F.3d 779, 782 (D. C. Cir. 2012); Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1229 (10th Cir. 1995).

Specifically prohibited are, but not limited to, evidence or argument that (i) Giles had the authority not to pay Plaintiff, in whole or in part, pursuant to the

Agreement, (ii) Giles had the authority to extinguish Defendant's obligation to pay Plaintiff under the Agreement, (iii) Defendant is not responsible or liable for, or is immune from, decisions Giles made on Defendant's behalf, and (iv) Plaintiff was required to obtain permission from the Fulton County Superior Court before filing this lawsuit.  Plaintiff's motion to prohibit Defendant from introducing evidence on these issues is granted.

4.   Evidence of Giles' Work As Custodian

Plaintiff seeks to exclude evidence of Giles' work as Defendant's custodian because, Plaintiff argues, Giles was appointed custodian in January 2012, and the contract between Plaintiff and Defendant had a stated term of December 6, 2010 to December 31, 2011.  Plaintiff contends that Giles' position as Defendant's custodian is not relevant to the claims and defenses presented in this case because he did not oversee Defendant's operations in 2010 and 2011.

In January or February of 2012, Giles reviewed the Agreement and the invoices for services that Plaintiff claims it provided to Defendant from December 2010 to December 2011.  In support of Defendant's Motion for Summary Judgment, Giles provided an affidavit in which he stated that Plaintiff did not provide any details regarding the work it performed under the Agreement, and Giles' review of the facts and circumstances resulted in his conclusion that

Defendant did not benefit from Plaintiff's work.  (See Giles Aff. at 8-10).  This affidavit shows that Giles was familiar with Plaintiff's performance under the Agreement, and Giles can testify whether Plaintiff provided the required deliverables.  (Id.).  Plaintiff's motion to exclude Giles' testimony about the services rendered or not rendered by Plaintiff under the Agreement is denied.  The Court notes, however, that any testimony Defendant offers from Giles is limited by the Court's further ruling that Defendant may not offer evidence that contradicts, alters, supplements, amends, or explains Bernice's testimony on the Rule 30(b)(6) Topics.  See supra, p. 5-6.

### 5.  Documents Not Produced In Discovery

Plaintiff seeks to exclude the following orders, entered by the Fulton County Superior Court in Bernice A. King, individually and as Administrator C.T.A. of the Estate of Coretta Scott King, and Martin Luther King, III v. Dexter S. King and Estate of Martin Luther King Jr., Inc., Case No. 2008-CV-153409:

- March 9, 2010, Consent Order Regarding Interim Custodian;

- October 26, 2010, Order Regarding Interim Custodian; and

- November 14, 2011, Order Regarding Interim Custodian.

Defendant does not oppose Plaintiff's motion to exclude the October 26, 2010, and November 14, 2011, orders, because Defendant admits that it did not

produce them in discovery.  Defendant is thus prohibited from introducing these orders at trial.  Plaintiff acknowledges that Defendant did, in fact, produce the March 9, 2010, order, but contends that it should be excluded because the order describes Giles' duties and responsibilities as custodian for Defendant.

The Court already has allowed Giles to testify about the actual services Plaintiff performed under the Agreement.  The scope of his overall duties is not relevant to the claims and issues in this case, and thus the March 9, 2010, order, is not probative of any issue in this case regarding Plaintiff's performance under the Agreement.  See Fed. R. Evid. 401, 402.  Plaintiff's motion to exclude the March 9, 2010, October 26, 2010, and November 14, 2011, orders, is granted.

6. <u>Testimony and Argument Regarding Attorneys' Fees</u>

Plaintiff requests the Court to permit its counsel to testify at trial regarding the value and reasonableness of attorneys' fees and expenses.  Defendant argues that Plaintiff's counsel should not be allowed to testify because "reasonableness of Plaintiff's attorneys' fees goes directly to the merits of Plaintiff's claim under O.C.G.A. § 13-6-11."  (Def.'s Resp. at 9).

Local Rule 39.3(B)(3) provides that "[i]n this court, an attorney for a party who is examined as a witness in an action or proceeding and who gives testimony on the merits shall not be permitted to argue the merits of the case or proceeding,

either to the court or the jury, except with permission of the court."  See

LR 39.3(B)(3), NDGa.  Under Georgia law, "[i]t is well established that an

attorney may testify as to the reasonableness of his own fee" even if the attorney

provides representation and argues the merits of the underlying case.  See

Nichols v. Main Street Homes, Inc., 536 S.E.2d 278, 280 (Ga. Ct. App. 2000); see

also McSweeny v. Kahn, 347 F. App'x 437, 442 (11th Cir. 2009).  Georgia law

expressly contemplates that an attorney can testify to support a claim for attorneys'

fees under O.C.G.A. § 13-6-11, and it is allowed.  See id.

Defendant also objects to Plaintiff's counsel's testimony on the

reasonableness of attorneys' fees on the ground that he is not qualified to testify as

an expert on the reasonableness of his fees under Rule 702 of the Federal Rules of

Evidence.  The testimony cannot be offered as expert testimony under Rule 702

but may be offered, under Rule 701, as counsel's opinion, in his individual

capacity, on the reasonableness of the attorneys' fees and expenses for legal

services provided in this matter.  As lead counsel for Plaintiff since the beginning

of this matter, Plaintiff's counsel is "certainly qualified to testify as to the amount

and value of his, and his firm's, legal services."  See McSweeny, 347 F. App'x at

442.  It is generally accepted that a witness may offer an opinion, under Rule 701,

even if it is a technical one, based on the witness's personal knowledge and

20

experience.  See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.,

320 F.3d 1213, 1222-1223 (11th Cir. 2003); see also Rule 701, Advisory

Committee Notes to 2000 Amendment.

Plaintiff's counsel is allowed to testify about the legal services performed

and the hourly rate charged and the overall value of the services.  Counsel may

also express, under Rule 701 of the Federal Rules of Evidence, his opinion on the

reasonableness of the attorneys' fees requested.  Counsel may not be qualified as

an expert under Rule 702 and may not express an expert opinion on the

reasonableness of the attorneys' fees claimed.

C.      Plaintiff's Motion for Leave to Amend Proposed Pretrial Order

On June 23, 2015, Plaintiff moved to amend the Proposed Pretrial Order to

(1) designate additional deposition pages of Martin Luther King, III's testimony,

and (2) add O.C.G.A. § 7-4-15, a statute that governs prejudgment interest, to its

outline of the case to conform with the damages requested in the Complaint.

"There is a presumption that a pretrial order will be amended in the interests of

justice and sound judicial administration, provided there is no substantial injury or

prejudice to the opposing party or inconvenience to the court."  United States

v. Varner, 13 F.3d 1503, 1507-08 (11th Cir. 1994).  Because Defendant did not

object to Plaintiff's proposed amendments, Plaintiff's Motion to Amend the

Proposed Pretrial Order is granted.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine [107] to

exclude settlement communications described in Exhibits 19, 136, 143, 144, 145,

146 and 180, identified in Attachment G-1 of the Proposed Pretrial Order, is

**DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine [108] to

bifurcate the trial, and exclude evidence of its alleged discovery abuse is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine [109] to

exclude evidence related to Robert Adams' lawsuit is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine [110] is

**GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion in Limine to

exclude (i) evidence of Defendant's fee arrangement with counsel, (ii) non-party

witnesses from the courtroom during trial, (iii) the issues resolved at summary

judgment and specifically identified in this Order, and (iv) the March 9, 2010,

October 26, 2010, and November 14, 2011, orders regarding interim custodian, is

**GRANTED**.  Plaintiff's Motion in Limine to exclude evidence of Giles' work as

Defendant's custodian is **DENIED**, but this evidence is subject to the limitations imposed regarding testimony offered by Defendant's Rule 30(b)(6) representative. Plaintiff's Motion in Limine to allow testimony regarding the reasonableness of the amount of attorneys' fees at trial is **GRANTED**, provided that the testimony may not be offered as expert testimony.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend Proposed Pretrial Order [122] is **GRANTED**.

**SO ORDERED** this 10th day of August, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE